## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DORY TURNIPSEED                                          CIVIL ACTION

VS.                                                     NO: 18-5187

APMT, LLC d/b/a "Tonti Management"                      SECTION: "J" (4)
_____/              JURY TRIAL REQUESTED


### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, DORY TURNIPSEED, through undersigned counsel, who brings this action against Defendant APMT, LLC *d/b/a* "TONTI MANAGEMENT" stating that:

### JURISIDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 11 U.S.C. § 1331 because this lawsuit is brought under the Fair Housing Amendments Act ("FHHA"), 42 U.S.C. § 3601 et seq.

2. Venue is proper in the Eastern District of Louisiana, New Orleans Division, under 28 U.S.C. § 1391(b) in that the events giving rise to this action occurred in this judicial district.

### PARTIES AND PROPERTIES

3. At the time of filing Plaintiff, DORY TURNIPSEED (hereinafter "TURNIPSEED" or "Plaintiff"), resides in Sunlake Apartments located at 854 Joe Yenni Blvd. APT 23, Kenner, Louisiana, 70065.

4. Defendant, APMT, LLC *d/b/a* "TONTI MANAGEMENT" (hereinafter "TONTI" or "Defendant"), is a Louisiana Limited Liability Corporation located at 4433 Conlin Street, Metairie, Louisiana, 70006. At all times relevant, TONTI was the managing agent of Sunlake Apartments and provided on-site property management of Sunlake Apartments.

5. The apartment units at TONTI are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b), FHA and as such, are subject to the anti-discrimination provisions of the FHA.

## **GENERAL ALLEGATIONS**

6. TURNIPSEED suffers from and has a history of suffering from a "handicap" as defined by the FHA, 42 U.S.C. § 3602(h).

7. Specifically, TURNIPSEED suffers from and has a history of suffering from depression with suicidal ideations, a Generalized Anxiety Disorder and Attention Deficit Hyperactivity Disorder, mental impairments that substantially affect her major life activities, including sleeping and concentrating.

8. TURNIPSEED has also suffered many traumatic events in her personal life and in her former job as an Emergency Medical Technician (EMT) and suffers frequent flashbacks to these events.

9. TURNIPSEED was first diagnosed with depression and anxiety while in college and has experienced panic attacks so severe that she lost consciousness.

10. TURNIPSEED is and has been a patient of the Ochsner Psychiatry Resident Program for more than three (3) years.

11. TURNIPSEED has owned a mixed breed dog, "Sasha," since 2013. Sasha weighs approximately thirty-five (35) lbs.

12. In April 2018, TURNIPSEED decided to try again to live independently of her parents, and on April 13, 2018 signed a six-month lease with TONTI for her current residence in Sunlake Apartments.

13. TURNIPSEED's parents had agreed that Sasha could continue living with them at their house after TURNIPSEED moved into her apartment. Accordingly, TURNIPSEED did not ask for permission to have Sasha at Sunlake Apartments, or complete Sunlake Apartment's "Animal Disclosure and Animal Lease Addendum."

14. After TURNIPSEED began to live alone in her apartment, the symptoms of her anxiety disorder substantially worsened. She has been extremely anxious, unable to sleep or concentrate, and is plagued by constant flashbacks to the death of a close friend by suicide. She is also having flashbacks to extremely disturbing situations she encountered as an EMT.

15. TURNIPSEED has been unable to manage the symptoms of her disabilities. She discovered that the only time her symptoms are minimized is when she is accompanied by her dog, Sasha.

16. TURNIPSEED consulted Dr. Jeffrey Friedman, a licensed clinical social worker. Dr. Friedman conducted a psychological evaluation of TURNIPSEED which included an interview and  review of her lengthy mental health history indicating an ongoing struggle with mental impairments, as well as the treatment regimen and medication she had been prescribed for such impairments. Dr. Friedman wrote a letter verifying Plaintiff's disability related need to live with Sasha for emotional support. The interview portion of the psychological evaluation was conducted by telephone because Dr. Friedman's office is in South Florida.

17. On May 9, 2018, TURNIPSEED contacted TONTI through an electronic portal for residents and requested that she be allowed to live with Sasha as an emotional support animal at her apartment.

18. TURNIPSEED received a telephone call from Ms. Sherri Roane (hereinafter "Ms. Roane"), an Administrative Assistant for TONTI, who asked TURNIPSEED to email documentations verifying that she required an emotional support animal.

19. Per the request, TURNIPSEED emailed Ms. Roane the letter from Dr. Friedman, Sasha's vaccination records, adoption and training records, and summaries of TURNIPSEED's psychiatric appointments dating back to April 9, 2015.  Dr. Friedman's letter and the other material she submitted to TONTI are attached as Exhibit A.

20. On May 10, 2018, TURNIPSEED emailed Ms. Roane to ask for an update, stating she did not know how long the process usually takes and adding "I apologize for my impatience, I have been struggling to cope." Her email is attached as Exhibit B.

21. Later, on May 10, 2018, TURNIPSEED received a telephone call at her place of employment from Ms. Roane and another TONTI employee. The tone of the conversation was hostile and accusatory, causing TURNIPSEED to burst into tears. At the end of the telephone, call Ms. Roane indicated that TURNIPSEED would be provided additional paperwork from TONTI to complete.

22. On May 12, 2018, TURNIPSEED became increasingly anxious and was fearful that she posed a danger to herself. TURNIPSEED went to her parents' home, picked up Sasha, and brought the dog to her apartment to help her cope with her extreme anxiety.

23. On May 14, 2018, TURNIPSEED emailed Ms. Roane to inform her that TURNIPSEED had not received any paperwork from TONTI regarding her accommodation request.

TURNIPSEED also informed Ms. Roane she had needed to speak with her therapist over the weekend "because the anxiety of waiting and anticipation was becoming unbearable to the point where I feared becoming a danger to myself."  TURNIPSEED made Ms. Roane aware that she had picked up Sasha. Her May 14, 2018 email is attached as Exhibit C.

24. Later that evening, a notice entitled "ANIMAL VIOLATION" was placed on the door of TURNIPSEED's apartment stating that TURNIPSEED would be required to pay a $600.00 non-refundable animal fee and an additional $450.00 security deposit. The notice further warned that if TURNIPSEED's animal is not approved or if she failed to pay the $1,050.00 within 24 hours, "the charges per your lease of two times the applicable animal fee and an additional security deposit will apply, regardless of whether you remove the animal, and Lessor will ask for return of premises."  The notice is attached to this complaint as Exhibit D.

25. After the notice regarding an "unapproved animal" was posted on her door, TURNIPSEED posted a reply to the notice on the management office door explaining that she was in the process of having Sasha approved through a reasonable accommodation request, but due to a decline in TURNIPSEED's mental stability it became necessary to bring Sasha to her apartment prior to obtaining approval. The response, attached hereto as Exhibit E, reiterated: "As I have explained to Ms. Roane, I am not attempting to circumvent your rules. I do suffer from mental disabilities which greatly affect my ability to function in day to day life." TURNIPSEED included a copy of the letter from Dr. Jeffrey Friedman, his contact information, and the email correspondence with Ms. Roane.

26. The next day, May 15, 2018, TURNIPSEED received a letter via email from James C. Rather, Jr., counsel for TONTI (hereinafter "Mr. Rather"), essentially accusing TURNIPSEED of faking her need for an emotional support animal based upon the fact that on her application for the apartment TURNIPSEED had indicated she had no animals, and "the social worker's letter appears to have been purchased of the internet." Mr. Rather further threatened TURNIPSEED with eviction if she did not pay $1,050.00 within 48 hours and "cease and desist from bringing any unauthorized animals onto the property." His letter informed TURNIPSEED that her request for accommodation was being denied because it "fails to satisfy the elements of the FHA," and, without explaining what additional information TONTI deemed necessary to "satisfy the elements of the FHA" invited TURNIPSEED to submit additional information to him by "no later than the close of business tomorrow so we may continue this collaborative process." The letter from Mr. Rather is attached hereto as Exhibit F.

27. TURNIPSEED replied to Mr. Rather by email, advising that Dr. Friedman's letter was not purchased off the internet and that Dr. Friedman is "more than happy" to speak with him.  Later she further replied to Mr. Rather, advising him that she was returning Sasha back to her parent's house. The emails are attached as Exhibit G.

28. Mr. Rather failed to contact Dr. Friedman regarding TURNIPSEED's need for an emotional support animal, and on May 16, 2018 reiterated to TURNIPSEED via email his assumption that her request was illegitimate:

> "Based upon what you have submitted thus far, it does not appear Mr Friedman is your therapist. He is a Florida social worker you sought out on the Internet for the sole purpose of purchasing an ESA letter, as your treating physician refused to issue one. Mr.

Friedman sold you the letter despite the fact you have never met
him and spoke to him by phone only once. " (Exhibit H)

29. Later, on May 16, 2018, Plaintiff's Counsel contacted Mr. Rather regarding why
TURNIPSEED had not indicated that she had a pet when applying for an apartment.
Plaintiff's counsel cited Dr. Friedman's qualifications for rendering an opinion regarding
TURNIPSEED's disability related need for an accommodation, and informed Mr. Rather
that he was incorrect in his assumption that Dr. Friedman's opinion that TURNIPSEED
needed an emotional support animal was based solely upon her having only "spoke to
him briefly by telephone." Her correspondence, transmitted to Mr. Rather via email, is
attached to this complaint as Exhibit I.

30. Plaintiff's counsel's correspondence unsuccessfully attempted to educate Mr. Rather
regarding the permissible scope of inquiry by a housing provider that has been asked to
grant a request for accommodation of an emotional support animal, and demanding
confirmation that TONTI has waived any policy that would prevent TURNIPSEED from
residing with her dog, Sasha, as an accommodation of her disabilities within 48 hours.
(Please see Exhibit I.)

31. Plaintiff's counsel did not enjoy the courtesy of a response from Mr. Rather.  Instead, on
May 18, 2018, Plaintiff received an email from Ms. Roane stating:

"We are sending a final inquiry to ask if you intend to submit any
other documents or information related to your request for Sasha to
live with you.  If so, please provide that information no later
Monday May 21, 2018 at noon.

If we do not receive any additional information or notification
from you by Monday May 21, 2018 at noon we will assume you do

not wish to provide additional documentation or information and
that you do not intend to pay the $1,050 balance."

32. TURNIPSEED responded to Ms. Roane by informing her that she is represented by

counsel and has been advised not to communicate with TONTI regarding Sasha.

Nonetheless, Ms. Roane replied again:

"We would like to extend to you the offer for you to termite (sic)
your lease with a 48-hour notice if you feel that would be in your
best interest.

I have attached the Intent to Vacate form should you wish to use it.
Tonti will waive any notice fees or cancellation fees."

33. On May 23, 2018 TONTI sued TURNIPSEED for eviction.

34. On June 3, 2018 TURNIPSEED was so distraught over her pending eviction that she was

involuntarily committed to Seaside Behavioral Hospital for Major Depression so acute

TURNIPSEED was deemed a danger to herself.

35. Upon TURNIPSEED's release from SEASIDE BEHAVIORAL HOSPITAL almost a

week later, TURNIPSEED's counsel provided TONTI a copy of TURNIPSEED's

discharge instructions and a letter from SEASIDE BEHAVIORAL HOSPITAL's Staff

Psychiatrist Dr. Mike Mahony MD requesting that TURNIPSEED be allowed to live with

her emotional support animal. (EXHIBIT J)

36. On June 11, 2018 TURNIPSEED through counsel requested that, in light of

TURNIPSEED's involuntarily commitment because of TURNIPSEED's deteriorated

mental state, TONTI reconsider its denial of TONTI's  refusal to waive the 25 lb weight

limit "so that Ms. Turnipseed may have the therapeutic benefit of residing with her dog Sasha for emotional support." (EXHIBIT J)

37. Notwithstanding its awareness that TURNIPSEED's mental health had deteriorated to the point where she was involuntarily committed to a mental hospital, and having been provided a letter from SEASIDE BEHAVIORAL HOSPITAL's Staff Pyschiatrist Dr. Mike Mahony MD requesting that TURNIPSEED be allowed to live with her emotional support animal, TONTI's counsel responded by asking that TURNIPSEED execute a release "allowing my client to contact her healthcare providers to verify the disability as permitted by the FHA. " (EXHIBIT K)

38. Efforts to educate TONTI's counsel that contacting TURNIPSEED's health care providers is not "permitted by the FHA" and is actually expressly forbidden by HUD guidance, ("A housing provider also may <u>not</u> ask an applicant or tenant to provide access to medical records or medical providers or provide detailed or extensive information or documentation of a person's physical or mental impairments." (emphasis in the original)) was futile. EXHIBIT L.

39. On June 18, 2018 TONTI  successfully obtained an order evicting TURNIPSEED, whom TONTI  knew was struggling with mental illness, the symptoms of which were so severe TURNIPSEED had been hospitalized until 10 days prior to the eviction proceeding.

40. Defendant has at all times relevant had actual knowledge of TURNIPSEED's disability-related need to live with Sasha as her assistance animal.

41. TONTI has denied Plaintiff's request for accommodation and evicted her without asking for any specific additional information regarding Plaintiff's disability or disability related need for an accommodation.

42. TURNIPSEED has been injured by TONTI's discriminatory housing practices and therefore qualifies as an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

43. TURNIPSEED has retained undersigned counsel and is obligated to pay a reasonable fee for their services.

44. TURNIPSEED has complied with all necessary conditions precedent to the bringing of this action, or such conditions have been waived.

**CLAIMS FOR RELIEF**

**<u>COUNT I: FAILURE TO REASONABLY ACCOMMODATE</u>**
**<u>42 U.S.C. § 3604(f)(3)(B)</u>**

45. Plaintiff re-alleges and incorporates, by reference, paragraphs 1 through 44 as if fully set forth herein.

46. TURNIPSEED has a disability related need to live with her dog, Sasha, an emotional support animal.

47. At all times relevant to this action, TONTI has had actual knowledge of TURNIPSEED 's disability.

48. TURNIPSEED requested a waiver of TONTI's policy disallowing animals that weigh over twenty-five (25) pounds so that she may reside with her dog, Sasha, and benefit from the emotional support that Sasha provides.

49. TURNIPSEED provided reliable verification of her handicap and disability-related need for an accommodation.

50. TONTI refused to grant TURNIPSEED the requested accommodation, threatened TURNIPSEED that if TURNIPSEED did not pay $1050.00 or brought her emotional support animal to her apartment, and then evicted her.

51. TONTI's failure to waive its weight restriction and requirement for a non-refundable pet deposit to accommodate for TURNIPSEED's disabilities is discriminatory and unlawful.

52. TONTI's actions and conduct constitute a conscious and reckless disregard for TURNIPSEED 's rights and show total indifference to TURNIPSEED's disabilities.

53. Providing an accommodation to TONTI's policies so TURNIPSEED may live in her apartment with Sasha as an emotional support animal would not: 1) result in substantial physical damage to the property of others; 2) pose an undue financial and administrative burden; or 3) fundamentally alter the nature of the Tonti's operations.

54.  TONTI violated 42 U.S.C. § 3604(f)(3)(B), FHA, through its conduct and acts described above by refusing to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations are necessary to afford TURNIPSEED an equal opportunity to use and enjoy her dwelling.

55. As a direct and proximate result of TONTI's failure to accommodate, TURNIPSEED's symptoms have worsened. TURNIPSEED has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

56. TONTI's discriminatory conduct and actions were intentional, willful, and taken in blatant disregard of TURNIPSEED's rights.

   **WHEREFORE**, Plaintiff, DORY TURNIPSEED, demands judgment against Defendant, APMT, LLC *d/b/a* "TONTI MANAGEMENT," to declare that its actions, omissions, and policies violated the Fair Housing Act by discriminating against a person with disabilities, and to award TURNIPSEED compensatory and punitive damages, attorney's fees and costs, injunctive relief, and any other relief as justice may require.

## <u>COUNT II</u>
## <u>INTIMIDATION, 42 U.S.C. § 3617 FHA</u>

57. Plaintiff re-alleges and incorporates, by reference, paragraphs 1 through 44 as if fully set forth herein.

58. Plaintiff's dog, Sasha, provides her with emotional support that helps ameliorate the symptoms of her disabilities. Accordingly, Sasha is an assistance animal, not a pet.

59. Plaintiff was charged $1050.00 and evicted for exercising her Fair Housing Act rights by bringing her emotional support animal to her apartment in a period of acute mental crisis.

60. TONTI was aware of Plaintiff's disabilities and disability related need for her dog as well as her fragile mental state when it fined Plaintiff and evicted her.

61. TONTI, through its conduct and actions described above, violated 42 U.S.C. § 3617 FHA by coercing, intimidating, threatening, or interfering with Plaintiff in the exercise and enjoyment of her fair housing rights granted under the FHA.

62. As a result of the conduct of Defendant, TONTI, Plaintiff TURNIPSEED has suffered damages.

63. As a direct and proximate result of TONTI's illegal intimidation tactics, TURNIPSEED's symptoms have worsened. TURNIPSEED has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

64. The discriminatory conduct or actions of TONTI were intentional, willful, and taken in blatant disregard for the rights of Plaintiff.

**WHEREFORE,** Plaintiff, DORY TURNIPSEED, seeks a declaration that the actions of APMT, LLC *d/b/a* "TONTI MANAGEMENT" violated the Fair Housing Amendments Act by discriminating against a person with disabilities and seeks an award to Plaintiff of compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

**COUNT III**
**MAKING A DWELLING UNAVAILABLE BECAUSE OF HANDICAP**
**42 U.S.C. § 3604(f)(1)(A) FHA**

65. Plaintiff re-alleges and incorporates, by reference, paragraphs 1 through 44 as if fully set forth herein.

66. Plaintiff requires the ability to live with her emotional support animal, Sasha, in order to have the same opportunity to enjoy her dwelling within Sunlake Apartments as any non-disabled resident.

67. Defendant, knowing of TURNIPSEED'S disability related need to live with Sasha, nonetheless evicted her because after requesting permission to have an emotional support animal she bought the her emotional support animal Sasha to her apartment.

68. The foregoing conduct and acts of Defendant constitutes discrimination against a person in violation of 42 U.S.C. § 3604(f)(1)(A), FHA, by making a dwelling unavailable because of a handicap.

69. As a result of the conduct of Defendant, TURNIPSEED has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

70. The discriminatory conduct or actions of Defendant was intentional, willful, and taken in blatant disregard for the rights of Plaintiff.

**WHEREFORE**, Plaintiff, DORY TURNIPSEED, seeks a declaration that the actions of APMT, LLC *d/b/a* "TONTI MANAGEMENT" violated the Fair Housing Amendments Act by discriminating against a person with disabilities and seeks an award to Plaintiff of compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

## DEMAND

**WHEREFORE,** Plaintiff, DORY TURNIPSEED, demands judgment against Defendant, APMT, LLC *d/b/a* "TONTI MANAGEMENT" which:

    a.   Declares the discriminatory housing practices of Defendant, as set forth above, violate the FHAA, 42 U.S.C. § 3601 *et seq.*;

    b.   Enjoins Defendant from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap an equal right to enjoy a dwelling;

    c.   Awards Plaintiff compensatory and punitive damages as would fully compensate her for the discriminatory conduct of Defendant;

    d.   Awards Plaintiff her attorney's fees and costs incurred in bringing this action to enforce the FHAA, and

    e.   Grants any other such relief as this Court deems just and equitable.

Respectfully submitted,

/s/ *Sherri L. Hutton*_____
Sherri L. Hutton (LSBA #28369)
Counsel for Plaintiff, Dory Turnipseed

LAW OFFICE OF SHERRI HUTTON
700 Camp Street, Suite 112
New Orleans, Louisiana 70130
Telephone: 504-289-6728
Facsimile: 504-515-0317
Email: shutton@sherrihuttonlaw.com


/s/ *Marcy I. LaHart*
Marcy I. LaHart
Marcy I. LaHart, PA
207 SE Tuscawilla Rd.
Micanopy, FL 32667
Telephone: (352) 545-7001
Facsimile: (888)-400-1464
marcy@floridaanimallawyer.com

## CERTFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing has been served on this 20th day of June 2018 via the Court's CM/ECF system to all counsel of record.


/s/ *Marcy LaHart*