

# MARCY I. LAHART, P.A.

ANIMAL LAW • ENVIRONMENTAL LAW • WATER LAW • ADMINISTRATIVE LAW

May 16, 2018

James C. Rather, Jr.　　　　　　　　via e-mail to jrather@alker-rather.com
Alker & Rather LLC
4080 Lonesome Road
Mandeville, LA 70448


RE: Dory Turnipseed v. Tonti Managment


Dear Mr. Rather:

I have been retained by Dory Turnipseed to address Tonti Managment's denial of her request for a waiver of policies that would prevent Ms. Turnipseed from residing in her apartment with her dog Sasha for emotional support.

Your May 15, 2018 correspondence makes several incorrect assumptions. Furthermore, your accusatory tone coupled with a threat of eviction is hardly indicative of a "collaborative process." In fact the demand that Ms. Turnipseed pay $1,050.00 for having brought her dog to her apartment when she was suffering from a severe anxiety attack and was fearful she might harm herself smacks of illegal retaliation.

When Ms. Turnipseed applied to be a resident, she did not intend to bring Sasha with her, and had made arrangements to have the dog remain with her parents. She did in fact inform a Tonti Managment employee, "Joanie," last name unknown, that she had a dog that would remain at her parents' house. That seems hardly relevant given that at the time my client entered the lease, she did not anticipate needing to bring Sasha to her apartment.

Ms. Turnipseed "suddenly disclosed the existence of Sasha" only after she experienced a dramatic increase in her anxiety symptoms, which became so severe that she could not sleep and suffered frequent crying spells. Medications have not been effective in controlling Ms. Turnipseed's anxiety, and after leaving the dog with her parents she realized that the only time she truly felt relief from her anxiety was when Sasha was with her.

Mr. James C. Rather
May 16, 2018
Page 2

My client did not purchase a letter from Mr. Friedman "off the internet." She had multiple telephone sessions with him. Mr. Friedman's opinion that Ms. Turnipseed needs the presence of her dog to help ameliorate the symptoms of her mental illness is based upon extensive telephone interviews as well as his knowledge of her current regimen of medications and her long history of struggles with depression and anxiety. Ms. Turnipseed has battled mental impairments through most of her adolescent and adult life.

Your presumption that Ms. Turnipseed's psychiatrist refused to write a letter verifying my client's disability related need for an accommodation is "because he thought it would be of no therapeutic benefit, or you did not meet the criteria" is pure speculation on your part. Mental health care providers are often reluctant to draft letters regarding assistance animals for patients that would benefit from such animals solely because they fear being dragged into litigation and then required to take time from their practices for depositions and courtroom testimony.

While I do not know why Ms. Turnipseed's psychiatrist stated that he does not "write ESA letters," I do know that Mr. Friedman is well qualified to opine as to whether a person's disability would be ameliorated by living with an assistance animal. Mr. Friedman, soon to be Dr. Friedman, is a Licensed Clinical Social Worker with many years of experience in psychotherapy. He is familiar with the multiple peer reviewed studies documenting the mood stabilization effects and other therapeutic benefits of residing with companion animals. Given that someone can talk with their physician or nurse practitioner for five minutes and get a prescription for psychotherapeutic medications, I am confident that Mr. Friedman's independent assessment of Dory Turnipseed and his review of her psychiatric history are an adequate basis for his determination that she needs an emotional support animal.

As you are presumably aware, a housing provider has a legal obligation to make modifications to its rules, policies, practices, or services when such modification may be necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling. Waiving pet restrictions for disabled residents that rely upon emotional support animals is such a modification. HUD guidance regarding the appropriate level of inquiry regarding a resident's need for an emotional support animal provides that:

> ". . . the housing provider may ask persons who are seeking a reasonable accommodation for an assistance animal that provides emotional support to provide documentation from a physician, psychiatrist, **social worker**, or other mental health professional that the animal provides emotional support that alleviates one or more of the identified symptoms or effects of an existing disability.  **Such documentation is sufficient if it establishes that an individual has a disability and that the animal in question will provide some type of disability related assistance or emotional support**." (emphasis added) , *Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded Programs* (April 25, 2013)

Tonti Managment has been informed that Dory Turnipseed suffers from and has a history of suffering from mental impairments, and has been provided documentation that living with Sasha will assist her in managing her anxiety, ADHD and difficulty sleeping. Rather than granting her

an accommodation, or even requesting addition information regarding her disability related need for an emotional support animal, Tonti Managment insinuated my client is a liar that is faking her disability, and flatly denied her request "because the information fails to satisfy essential elements of the FHA." No insight has been provided as to what additional information Tonti Managment feels is necessary in order to "satisfy essential elements of the FHA," and no specific information has been requested. Finally, my client has been commanded to pay $1,050.00 within 48 hours, and threatened with what would clearly be a retaliatory eviction. This conduct is not a "collaborative process," it is bullying of a person with disabilities in an attempt to convince her not to exercise her fair housing rights, and blatantly violates the FHA.

Ms. Turnipseed will not be paying the $1,050.00 penalty for seeking relief from an acute mental crisis in the companionship of her dog. If within 48 hours of this correspondence I have not received confirmation that Tonti Managment has waived any policy that would prevent my client from residing with her dog Sasha as an accommodation of her disabilities, I will promptly initiate a complaint against Tonti Managment for disability discrimination.

Sincerely,

Marcy LaHart, Esq.

*/s/ Marcy I LaHart*
Marcy LaHart, PA
207 SE Tuscawilla Road
Micanopy, FL 32667
(352) 545-7001/(888) 400-1464 (Facsimile)